UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM CHARLES
BARNES,

                Plaintiff,

v.

ANDREW SAUL,
COMMISSIONER OF
SOCIAL SECURITY,[1]

                Defendant.

_____/

Civil Action No.: 19-10468
Honorable Nancy G. Edmunds
Magistrate Judge Elizabeth A. Stafford

### REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 12, 14]

Plaintiff William Charles Barnes appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits (DIB).  Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B).  After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

---

[1] Under Federal Rule of Civil Procedure 25(d), Saul is the successor defendant.

- Barnes's motion [ECF No. 12] be **DENIED**;

- the Commissioner's motion [ECF No. 14] be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## I.    Background

### A.    Background and Disability Applications

Barnes was born on May 22, 1967, making him 47 years old on his alleged onset date of September 1, 2013.  [ECF No. 10-3, PageID.120-121].  He has past work as an airport utility worker and apartment maintenance worker.  [ECF No. 10-2, PageID.80].  He alleged disability because of fibromyalgia, nephrotic syndrome, disorders of the back (discogenic and degenerative) and anxiety disorders.[2]  [ECF No. 10-3, PageID.126].

After the Commissioner denied his disability application initially, Barnes requested a hearing, which took place in January 2016, and during which he and a vocational expert (VE) testified.  [ECF No. 10-2, PageID.92-118].  In a March 2016 written decision, the ALJ found Barnes not disabled.

---

[2] Nephrotic syndrome is a kidney disorder that causes the body to pass too much protein in the urine.  https://www.mayoclinic.org/diseases-conditions/nephrotic-syndrome/symptoms-causes/syc-20375608 (last visited on April 24, 2020).

[*Id.*, PageID.71-82].  The Appeals Council denied review, making the ALJ's

decision the final decision of the Commissioner, and Barnes timely filed for

judicial review.  [*Id.*, PageID.33-36; ECF No. 1].

### B.    The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by

analyzing five sequential steps.  First, if the applicant is "doing substantial

gainful activity," he or she will be found not disabled.  20 C.F.R. §

404.1520(a)(4).  Second, if the claimant has not had a severe impairment

or a combination of such impairments[3] for a continuous period of at least

12 months, no disability will be found.  *Id.*  Third, if the claimant's severe

impairments meet or equal the criteria of an impairment set forth in the

Commissioner's Listing of Impairments, the claimant will be found disabled.

*Id.*  If the fourth step is reached, the Commissioner considers its

---

[3] A severe impairment is one that "significantly limits [the claimant's]
physical or mental ability to do basic work activities."  § 1520(c).

assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Barnes was not disabled.  At the first step, he found that Barnes had not engaged in substantial gainful activity since his alleged onset date.  [ECF No. 10-2, PageID.73].  At the second step, the ALJ found that Barnes had the severe impairments of fibromyalgia, nephrotic syndrome, degenerative disc disease (disorders of back, discogenic and other severe degenerative), post-traumatic stress disorder (PTSD), anxiety disorder and bilateral shoulder tendonitis.  [*Id.*, PageID.73].  Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment.  [*Id.*, PageID.74].

Between the third and fourth steps, the ALJ found that Burnes had the RFC to perform light work as defined by 20 C.F.R. § 404.1567(b),

4

except:

> [He] could never climb ropes, ladders or scaffolds and
> occasionally perform the remaining posturals.  [He] could
> perform unskilled work involving one to three step repetitive
> tasks and no production like standards.  [He] can have only
> occasional superficial contact with the public and occasional
> interaction with co-workers and supervisors.

[ECF No. 10-2, PageID.76].  At the fourth step, the ALJ concluded that Barnes was unable to perform his past relevant work as an airport utility worker and apartment maintenance worker.  [*Id.*, PageID.81].  After considering Barnes's age, education, work experience, RFC and the testimony of the VE, the ALJ determined that Barnes could perform work as a packer, sorter and small product assembler, jobs which exist in significant numbers in the national economy.  [*Id.*, PageID.81-82].

## II.  Analysis

### A. Substantial Evidence Standard

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241

(6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Barnes argues that the ALJ erred by failing to address his objections and rebuttal evidence, and by discounting his treating physician's opinions. [ECF No. 12].  The Court finds that the ALJ's decision is supported by substantial evidence and recommends that it be affirmed.

## B. Post-Hearing Objections and Evidence

*1.*

Barnes first contends that the ALJ erred by failing to address his objections to the VE's testimony.  He included exhibits to his objections: (1) a report by vocational rehabilitation counselor Paula F. Santagati and (2) current information from the U.S. Department of Labor's Occupational Information Network (O*NET).  [ECF No. 12, PageID.575-576; ECF No. 10-7, PageID.281-282, 288-298, 314-315].  But Barnes did not submit his objections and supporting evidence until after the record closed.

At the request of Barnes's representative, the ALJ "left the record open for 30 days" after the January 29, 2016 hearing for Barnes to submit additional evidence.  [ECF No. 10-2, PageID.71, 107].  The ALJ then

6

considered medical evidence that Barnes submitted after the hearing.
[ECF No. 10-2, PageID.71, (citing ECF No. 10-11, PageID.503-562
(Exhibits 15F and 16F))].  Barnes did not submit his objections to the VE's
testimony until March 3, 2016, which was after the record closed but before
the ALJ's March 28, 2016 written decision.  [ECF No. 10-2, PageID.68;
ECF No. 10-7, PageID.275-316].  Because Barnes failed to submit his
objections and exhibits before the record closed, "[a]ny fault relating to the
ALJ's purported 'failure to consider' [Barnes's] post-hearing exhibits rests
squarely on [Barnes's] shoulders."  *Franson v. Comm'r of Soc. Sec.*, 556 F.
Supp. 2d 716, 723 (W.D. Mich. 2008).

In *Franson*, the plaintiff submitted evidence months after the hearing
and weeks before the ALJ's decision.  *Franson,* 556 F. Supp. 2d at 723.
The court noted that it would be committing reversible error if it considered
evidence that was not properly before the ALJ.  *Id.* at 723-24.  It would
have been reversible error because "[t]he Sixth Circuit has repeatedly held
that where, as here, the Appeals Council denies review and the ALJ's
decision becomes the Commissioner's decision, the court's review is
limited to the evidence presented to the ALJ."  *Id.* at 724 (collecting cases).
Thus, "the ALJ was under no obligation to consider the 'evidence' that

plaintiff attempted to dump unceremoniously into the record months after the close of proofs." *Id.* at 724.

*2.*

The Court cannot consider Barnes's belated submitted evidence for a substantial-evidence analysis, but it can consider whether this matter should be remanded for further proceedings.  Sentence six of § 405(g) permits remand to an ALJ for further consideration when there is "new evidence which is material and [ ] there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  § 405(g); *see also Shaw v. Comm'r of Soc. Sec.*, No. 00-10460-BC, 2004 WL 1765475, at *5 (E.D. Mich. July 14, 2004) ("The prevailing view in the Sixth Circuit" is to evaluate whether the evidence submitted after the hearing but before the ALJ's written decision "warrants further consideration as new and material information" under sentence six of § 405(g)).  Barnes meets none of the criteria for a sentence six remand.

First, Barnes fails to show that the evidence he submitted after the record closed was "new" or that he had "good cause" for failing to submit the evidence before the record closed.  Evidence is "new" if "it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2002) (quoting

8

*Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990).  For the "good cause" requirement, the Sixth Circuit "has taken a harder line" and requires a claimant to "give a valid reason for his failure to obtain evidence prior to the hearing."  *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir.1986).

Barnes argues that his objections and supporting evidence should have been considered by the ALJ because they were submitted "merely *four days* more than what the ALJ granted."  [ECF No. 18, PageID.666-667 (emphasis in original)].  But Santagati opinion is dated October 2015, nearly four months *before* the January 2016 hearing.  [ECF No. 10-2, PageID.71-82; ECF No. 10-7, PageID.314-315].  Thus, the opinion was not "new," and Barnes provides no explanation—much less good cause—for failing to provide it to the ALJ before the record closed.  Barnes "failed to take [ ] advantage of the opportunity to cross-examine the VE regarding Ms. Santagati's opinions."  *Keehl v. Comm'r of Soc. Sec.*, No. 1:18-CV-281, 2018 WL 4352155, at *4 (W.D. Mich. Sept. 12, 2018). Section 405(g) does not authorize a remand for the ALJ to consider evidence that Barnes inexplicably failed to timely submit.

Instead of justifying his belated submission of evidence, Barnes argues that the ALJ erred by forging ahead with a hearing based on faulty

9

vocational testimony.  [ECF No. 18; PageID.672].  But Barnes's belatedly

submitted evidence does not show that the vocational testimony was faulty;

his evidence does not meet the materiality requirement.

*3.*

Evidence is "material" if there is a "reasonable probability" that the

ALJ would have reached a different decision if the new evidence were

considered.  *Foster,* 279 F.3d at 357.

Barnes asserts that the DOT is outdated and the ALJ should have

considered the O*NET materials because it is "a more recent source of

information."  [ECF No. 12, PageID.575-579].  Barnes relies on

*Cunningham v. Astrue*, in which the court remanded the matter to the

Commissioner, reasoning that the Department of Labor replaced the DOT

with the O*NET; that the more-than-a-decade-old DOT included job

descriptions that appeared obsolete; and "that the VE's dependence on the

DOT listings alone does not warrant a presumption of reliability."  360 F.

App'x 606, 616 (6th Cir. 2010).  Based on the same reasoning, Barnes

argues "the ALJ's step 5 burden can only be met based on up-to-date,

reliable vocational evidence."  [ECF No. 12, PageID.576-577].  Although

*Cunningham* supports Barnes's argument, the opinion is no longer viable.

10

"Most notably, post-*Cunningham*, the Sixth Circuit directly held, in a published decision that the Dictionary of Occupational Titles (DOT) remains a reliable source of evidence: 'To establish that work exists in the national economy, the ALJ can rely on evidence such as the testimony of a VE and the DOT.'"  *Oneal v. Soc. Sec. Comm'r*, No. 4:17-CV-11380-TGB, 2018 WL 5532486, at *3 (E.D. Mich. Oct. 29, 2018), *aff'd*, 2020 WL 97414 (6th Cir. Jan. 7, 2020) (quoting *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010)).  The DOT is listed as a publication from which an ALJ may take "administrative notice of reliable job information."  *Kyle*, 609 F.3d at 855, (citing 20 C.F.R. § 404.1566(d).  The O*NET database is not on that list. § 404.1566(d).  Courts thus have held that the ALJ was not required to consult the O*NET, and failure to do so does not constitute error.  *Kidd v. Berryhill*, No. 5:17-CV-420-REW, 2018 WL 3040894, at *9 (E.D. Ky. June 19, 2018).

Recognizing the continued "confusion among some of the lower courts about whether the DOT continues to be a reliable source of information at step five," the Sixth Circuit recently clarified "that the DOT data can establish the existence of jobs in the national economy in significant numbers."  *O'Neal v. Comm'r of Soc. Sec.,* 799 F. App'x 313, 317 (6th Cir. 2020).  The *O'Neal* court also noted that the O*NET is not

included as a reliable source under § 404.1566(d). *Id.* "And, in fact, in 2010, the SSA determined that O*NET in its current form was not suitable for disability claims adjudication." *Id.* (citing Occupational Infor. Dev. Advisory Panel, *Findings Report: A Review of the National Academy of Sciences Report,* Report to the Comm'r of Soc. Sec. 1, 8 (June 28, 2010), https://www.ssa.gov/oidap/Documents/COMPLETE%20FINAL-Findings%20Report%20OIDAP%20062810.pdf).

For these reasons, there is no reasonable probability that the ALJ would reach a different conclusion had he considered the O*NET data.

*4.*

Barnes also fails to meet the materiality requirement with respect to Santagati's October 2015 opinion. Her opinion does not in any way address Barnes's history or evidence in the record; instead, it states generically that "a limitation of occasional interaction with coworkers and supervisors precludes all work as the training and probationary period for any job would require more than occasional interaction with co-workers and supervisors." [ECF No. 10-7, PageID.314-315]. This opinion has been rejected by multiple courts and Santagati is regarded as an incredible source. *Kidd*, 2018 WL 3040894, at *4 & n. 6 (describing Santagati's October 2015 opinion as "most generalized (and quite radical)" and as

12

saying "utterly nothing specific about Kidd's life, health, ability to work, or case"); *Looney v. Berryhill*, No. 3:17-cv-450, 2018 WL 3826778, at *12 (E.D. Va. Aug. 10, 2018) ("Several courts have received reports from Santagati containing identical testimony regarding work-preclusive social limitations, and have rejected the testimony for its lack of specificity, expertise and knowledge of the case in question."); *Lara v. Berryhill*, No. CV B-17-77, 2017 WL 7790109, at *10 (S.D. Tex. Dec. 4, 2017), *adopted*, No. CV B-17-077, 2018 WL 1027764 (S.D. Tex. Feb. 21, 2018) (describing Santagati's opinion as lacking any factual or evidentiary basis, and as failing to discuss the specific jobs the ALJ found that the claimant could do); *Rosado v. Berryhill*, No. 4:16-CV-00173, 2018 WL 816578, at *14 (E.D. Va. Jan. 22, 2018), *adopted*, No. 4:16CV173, 2018 WL 813891 (E.D. Va. Feb. 9, 2018) (affirming ALJ opinion that Santagati's opinions was not credible in part because she was employed by the claimant's representative for the specific purpose of offering an alternative opinion to the VE's).

There is no possibility that the ALJ would have reached a different decision had he considered Santagati's generic and oft-rejected opinion.

## C. Treating Physician Rule

Barnes asserts that the ALJ should have treated Mihajlo
Gjeorgjievski, M.D., as a treating physician and conducted a controlling
weight analysis of the doctor's opinions.  [ECF No. 12, PageID.587].  He
argues that the ALJ's failure to conduct a controlling weight analysis
renders it impossible to determine "whether the ALJ properly applied the
treating-physician rule."  [ECF No. 12, PageID.587 (citing *Gayheart v.
Commissioner of Social Security*, 710 F.3d 365, 377 (6th Cir. 2013))].
Barnes is right that the "treating physician rule" generally requires an ALJ to
give controlling weight to a treating physician's opinion.  *Gentry*, 741 F.3d
at 723, 727-29.  But Dr. Gjeorgjievski was not a "treating physician" whose
opinion was entitled to great deference.

The Sixth Circuit has considered three or fewer examinations to be
insufficient to establish treating physician status.  *Cruse v. Comm'r of Soc.
Sec.*, 502 F.3d 532, 540 (6th Cir. 2007) (opinion of doctor who treated three
times was not entitled to controlling weight); *Kornecky v. Comm'r of Soc.
Sec.*, 167 F. App'x 496, 506, n.10 (6th Cir. 2006) ("Indeed, depending on
the circumstances and the nature of the alleged condition, two or three
visits often will not suffice for an ongoing treatment relationship.").

14

The only records from Dr. Gjeorgjievski referred to by either the ALJ or Barnes are a November 2014 physical RFC assessment and March 2015 statements about Barnes's physical and mental limitations.  [ECF No. 10-2, PageID.79; ECF No. 10-10, PageID.444-448, 484-494; ECF No. 12, PageID.580-581].  The Commissioner points out that the record showed Barnes being treated seven times in the two years between his alleged onset date and the ALJ's decision, but not once by Dr. Gjeorgjievski.  [ECF No. 14, PageID.613].

It is also important to note that the "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions about the nature and severity of a claimant's condition *only* when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.  *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43.  Here, Dr. Gjeorgjievski does not explain what clinical or diagnostic evidence he relied on for his opinions.  [ECF No. 10-10, PageID.444-447, 484-494].  The Court also cannot tell to what extent Dr. Gjeorgjievski relied on his own examinations of Barnes.  Barnes and Dr. Gjeorgjievski both said that portions of the opinions were based on his "consultation" with Barnes's

15

physical therapist.  [ECF No. 12, PageID.581; ECF No. 10-10, PageID.448, 487].

In sum, Dr. Gjeorgjievski was not a "treating physician" and the record does not show that his opinion was supported by medically acceptable clinical and diagnostic evidence.  Thus, Dr. Gjeorgjievski's opinion was not entitled to controlling weight.

### D. Substantial Evidence Review

Within Barnes's treating-physician-rule-argument is an assertion that the ALJ's decision is not supported by substantial evidence.  [ECF No. 12, PageID.589-593].  Barnes argues that the ALJ "rel[ied] upon his lay analysis of the raw medical data."  [*Id.*, PageID.593].  The Court disagrees.

The Sixth Circuit has repeatedly found that it is the ALJ's responsibility to evaluate the medical evidence.  *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726 (6th Cir. 2013) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir.2004)).  The ALJ is charged with considering all evidence and assessing the claimant's RFC.  *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC.").

16

Here, the ALJ found that Barnes's complaints that his condition affected "his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, follow instructions, use his hands and get along with others" were not consistent with the medical evidence of record.  [ECF No. 10-2, PageID.77-81].  Barnes stated in his functional report that he could take care of his own personal care, drive, care for his two pets, prepare meals, clean, do laundry, complete household repairs like painting, and walk half a mile without stopping. [ECF No. 10-2, PageID.75-77; ECF No. 10-6, PageID.242-249].

The ALJ noted that, in September 2013, Barnes was admitted in a hospital because of complaints of numbness and weakness on the left side of his body.  [ECF No. 10-2, PageID.77; ECF No. 10-8, PageID.334-335; ECF No. 10-9, PageID.355-356].  The physician who admitted him conducted a physical examination and found only "left-sided numbness and questionable weakness."  [ECF No. 10-8, PageID.335].  A neurologist was consulted, and he found, "Exam evidence is not consistent with a true left-side weakness with significant give-way strength."  [ECF No. 10-9, PageID.355].

The ALJ considered imaging of Barnes's lumbar spine and left ankle. [ECF No. 10-2, PageID.78].  The examiner of the August 2015 MRI

17

concluded that Barnes had "[m]ild degenerative change of the L3-L4 disc space, without significant central anal stenosis or neuroforaminal encroachment."  [ECF No. 10-11, PageID.558].  Radiographs of his left ankle were "unremarkable" and Barnes "remained weight bearing."  [ECF No. 10-2, PageID.78; ECF No. 10-11, PageID.540].  There was no bruising or swelling, and Barnes was prescribed Motrin.  [ECF No. 10-2, PageID.78; ECF No. 10-11, PageID.540-541].

And according to a May 2015 physical examination, Barnes had joint pain, but no back or neck pain, no numbness, no weakness and no paresthesias.  [ECF No. 10-2, PageID.78; ECF No. 10-11, PageID.546-547].  Barnes had limitation and pain with range of motion in his hips, but he ambulated normally and all extremities were "otherwise unremarkable." [ECF No. 10-2, PageID.78; ECF No. 10-11, PageID.549].

The ALJ also considered Barnes's alleged psychological impairments.  [ECF No. 10-2, PageID.75-77].  Barnes went shopping, spent time reading and watching television, and was active in church.  [ECF No. 10-2, PageID.75; ECF No. 10-6, PageID.242-249].  He could pay attention for "hours if uninterrupted," and follow written instructions "well."  [ECF No. 10-2, PageID.75; ECF No. 10-6, PageID.247].  Barnes was negative for depression, had normal mood and affect, and was "not nervous/anxious"

18

during medical examinations.  [ECF No. 10-11, PageID.518, 520, 528, 538].

Assessing the opinion evidence, the ALJ gave great weight to the state agency medical consultant who opined that Barnes could perform a limited range of light work.  [ECF No. 10-2, PageID.80; ECF No. 10-3, PageID.127-129].  State agency consultants are considered "highly qualified . . . experts in the evaluation of the medical issues in disability claims under the Act." Social Security Ruling 96-6p, 1996 WL 374180 at *2 (July 2, 1996).  Since the ALJ relied in part on the state agency consultant's medical opinion, Barnes's claim that the ALJ relied on raw medical data and his own lay opinion is not true.

The ALJ gave little weight to the state agency psychological consultant's opinion that Barnes's mental health limitations were non-severe, "as the record establishes that the claimant has a severe medically determinable mental impairment." [ECF No. 10-2, PageID.80; ECF No. 10-3, PageID.125].  An ALJ's RFC assessment is supported by substantial evidence when it is more restrictive than the opinion evidence.  *Drinkwine v. Comm'r of Soc. Sec.*, No. CV 18-12327, 2019 WL 4866144, at *3 (E.D. Mich. Aug. 8, 2019), *adopted*, 2019 WL 4626674 (E.D. Mich. Sept. 24,

2019); *Chess v. Berryhill,* 2019 WL 845986, at *7 (E.D. Tenn. Jan. 3, 2019).

Barnes essentially asks the Court to reweigh the evidence considered by the ALJ, which is not permitted. *Cutlip v. Sec. of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (noting that, if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion").  The ALJ's decision should be affirmed.

## III.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Barnes's motion for summary judgment be [ECF No. 12] be **DENIED**; that the Commissioner's motion [ECF No. 14] be **GRANTED**; and that the ALJ's decision be **AFFIRMED**.

s/Elizabeth A. Stafford_____
ELIZABETH A. STAFFORD

Dated: April 30, 2020                    United States Magistrate Judge


## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation,

any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF

21

System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 30, 2020.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
